

KOH: USAO 2017R00438

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 MAR 12 PM 3: 25

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. PWG-17-661** |
| | * | |
| **ALDRIN FON FOMUKONG,** | * | **(Conspiracy to Commit Wire Fraud,** |
| a/k/a "Albanky," | * | **18 U.S.C. § 1349; Conspiracy to** |
| a/k/a "A.L.," | * | **Commit Money Laundering,** |
| **NKENG AMIN,** | * | **18 U.S.C. § 1956(h); Forfeiture,** |
| a/k/a "Rapone," | * | **18 U.S.C. §§ 981(a)(1)(C) and** |
| a/k/a "Arnold," | * | **982(a)(1), 21 U.S.C. § 853,** |
| **YANICK EYONG,** | * | **28 U.S.C. § 2461(c))** |
| **CARLSON CHO,** | * | |
| a/k/a "Uncle Tiga2," | * | |
| a/k/a "Carlson Banker," | * | |
| **ISHMAIL GANDA,** | * | |
| a/k/a "Banker TD," and | * | |
| **IZOU ERE DIGIFA,** | * | |
| a/k/a "Lzuo Digifa," | * | |
| a/k/a "Mimi VA," | * | |
| | * | |
| **Defendants** | * | |
| | * | |

\*\*\*\*\*\*\*

## SUPERSEDING INDICTMENT

### COUNT ONE
### (Wire Fraud Conspiracy)

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Superseding Indictment:

1.    **ALDRIN FON FOMUKONG, a/k/a "Albanky," a/k/a "A.L.,"**

("FOMUKONG") was a resident of Greenbelt, Maryland.

2.    **NKENG AMIN, a/k/a "Rapone," a/k/a "Arnold," ("AMIN")** was a resident of

Beltsville, Maryland.

3.      **CARLSON CHO, a/k/a "Uncle Tiga2," a/k/a "Carlson Banker," ("CHO")**
was a resident of Framingham, Massachusetts and Braintree, Massachusetts.

4.      **YANICK EYONG ("EYONG")** was a resident of Bowie, Maryland.

5.      **ISHMAIL GANDA, a/k/a "Banker TD," ("GANDA")** was a resident of
College Park, Maryland.

6.      **IZOU ERE DIGIFA, a/k/a "Lzuo Digifa," a/k/a "Mimi VA," ("DIGIFA")**
was a resident of Lynchburg, Virginia.

### *The Drop Accounts*

7.      "Drop Accounts" were bank accounts opened or controlled by the defendants and
their co-conspirators that were used to receive money from victims.

8.      **AMIN**  opened the following Drop Account:

a.      On or about February 7, 2017, **AMIN** opened Bank of America account
x9244 ("BOA x9244") in the name of JB Studio LLC.

9.      **EYONG** opened the following Drop Accounts:

a.      On or about June 17, 2017, **EYONG** opened Bank of America account
x0042 ("BOA x0042") in the name of CL Escrow LLC.

b.      On or about June 19, 2017, **EYONG** opened TD Bank account x3845
("TD Bank x3845") in the name of CL Escrow LLC.

10.     **GANDA** opened the following Drop Accounts:

a.      On or about August 8, 2016, **GANDA** opened Navy Federal Credit Union
account x3451 ("NFCU x3451") in the name of Giclef International LLC.

b.      On or about August 8, 2016, **GANDA** opened Navy Federal Credit Union
account x8060 ("NFCU x8060") in the name of Giclef International LLC.

c.      On or about August 8, 2016, **GANDA** opened Navy Federal Credit Union account x5615 ("NFCU x5615") in the name of Giclef International LLC.

11.      **DIGIFA** opened the following Drop Accounts:

a.      On or about November 17, 2016, **DIGIFA** opened TD Bank account x1076 ("TD Bank x1076") in the name Gryphson Renolt LLC.

b.      On or about May 22, 2017, **DIGIFA** opened Bank of America account x9237 ("BOA x9237") in the name of Mercatel Investment LLC.

c.      On or about May 23, 2017, **DIGIFA** opened SunTrust Bank account x4431 ("SunTrust x4431") in the name of Mercatel Investment LLC.

d.      On or about May 23, 2017, **DIGIFA** opened Capital One Bank account x3758 ("Capital One x3758") in the name of Mercatel Investment LLC.

12.      On or about February 23, 2016, Individual 1 opened Capital One account x4384 ("Capital One x4384") in the name of Syndicate Remera LLC.

13.      On or about February 21, 2017, Individual 2 opened Bank of America account x9655 ("BOA x9655") in the name of Chavez Investment Inc.

14.      On or about June 7, 2017, Individual 3 opened Bank of America account x7760 ("BOA x7760) in the name of Individual 3.

### *The Victims*

15.      Victim A was a business located in California.

16.      Victim B was a business located in Connecticut.

17.      Victim C and Victim D were residents of Nevada.

18.      Victim E resided in California.

19.      Victim F was a business located in Colorado.

3

20.    Victim G was a business located in Massachusetts.

21.    Victim H was a resident of Colorado.

22.    Victim I and Victim J were residents of Massachusetts.

23.    Victim K was a resident of California.

24.    Victim L was a resident of California.

## The Conspiracy

25.    Between in or about February 2016 and in or about July 2017, in the District of Maryland and elsewhere, the defendants,

**ALDRIN FON FOMUKONG,**
**a/k/a "Albanky,"**
**a/k/a "A.L.," and**
**NKENG AMIN,**
**a/k/a "Rapone,"**
**a/k/a "Arnold,"**

did knowingly and willfully combine, conspire, confederate and agree with each other and other persons, known and unknown to the Grand Jury, to knowingly devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises ("the scheme to defraud"), and for the purpose of executing and attempting to execute the scheme to defraud did knowingly and willfully transmit and cause to be transmitted by means of wire communication, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## Manner and Means of the Conspiracy and Scheme to Defraud

26.    It was part of the conspiracy and scheme to defraud that the co-conspirators gained access to email accounts associated with the Victims.

4

27. It was further part of the conspiracy and scheme to defraud that the co-conspirators sent false wiring instructions to the Victims' email accounts from spoofed email accounts.

28. It was further part of the conspiracy and scheme to defraud that the defendants and their co-conspirators opened and/or managed the Drop Accounts in order to direct into and receive millions of dollars from the Victims.

29. It was further part of the conspiracy and scheme to defraud that the defendants and their co-conspirators caused the Victims to use the wires to transfer money to the Drop Accounts.

30. It was further part of the conspiracy and scheme to defraud that the defendants and their co-conspirators disbursed the money received from the Victims into the Drop Accounts by, among other transactions, using wires to transfer money to other accounts, by initiating account transfers to other accounts at the same bank, by withdrawing sums of money, by obtaining cashier's checks, and by writing checks to other individuals or entities.

### Overt Acts

31. In furtherance of the conspiracy, and to effect the objects thereof, the defendants, and others known and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in the District of Maryland and elsewhere:

a. On or about July 23, 2016, a co-conspirator caused Victim A to wire $47,000 into Capital One x4384, controlled by Individual 1.

b. On or about July 24, 2016, a co-conspirator caused Victim A to wire $200,000 into Capital One x4384, controlled by Individual 1.

c.      On or about January 27, 2017, a co-conspirator caused Victim B to wire $165,179.30 into TD Bank x1076, controlled by **DIGIFA**.

d.      On or about March 9, 2017, a co-conspirator caused Victim C and Victim D to wire $875,000 and $123,620.55, at two different times, into BOA x9655, controlled by Individual 2.

e.      On or about April 25, 2017, **AMIN** provided **FOMUKONG** account information for BOA x9244.

f.      On or about May 2, 2017, a co-conspirator caused Victim E to wire $458,500 into BOA x9244, controlled by **AMIN.**

g.      On or about June 5, 2017, **FOMUKONG** provided a co-conspirator the information for SunTrust x4431, including the bank name, account number, account holder address, and business name (Mercatel Investment LLC).

h.      On or about June 7, 2017, a co-conspirator caused Victim F to wire $50,703 into SunTrust x4431, controlled by **DIGIFA.**

i.      On or about June 8, 2017, **FOMUKONG** obtained a train ticket for **DIGIFA** to travel from Virginia to Maryland on June 9, 2017 for the purpose of withdrawing from SunTrust x4431 funds obtained from Victim F.

j.      On or about June 15, 2017, a co-conspirator caused Victim L to wire $227,000 into BOA x7760, controlled by Individual 3.

k.      On or about June 16, 2017, **FOMUKONG** provided **CHO** with information regarding the cashier's checks to be withdrawn from BOA x7760, including the amount and name on the check.

l.    On or about June 16, 2017, **AMIN** provided **FOMUKONG** business registration documents for CL Escrow LLC, registered by **EYONG**.

m.    On or about June 21, 2017, **FOMUKONG** provided a co-conspirator the information for BOA x0042, including the bank name, account number, account holder address, and business name (CL Escrow).

n.    On or about June 21, 2017, **FOMUKONG** provided **AMIN** Victim G's name, "reason for wire," and "reason for cashier's check."

o.    On or about June 21, 2017, a co-conspirator caused Victim G to wire $6,000,000 ($6 million) into BOA x0042, controlled by **EYONG**.

p.    On or about June 23, 2017, a co-conspirator caused Victim H to wire $104,450 into Capital One x3758, controlled by **DIGIFA**.

q.    On or about June 24, 2017, a co-conspirator sent **FOMUKONG** the following messages: "That bar don enter the capital one" and "$104845."

r.    On or about June 29, 2017, a co-conspirator caused Victim H to wire $149,226 into NFCU x3451, controlled by **GANDA**.

s.    On or about June 29, 2017, **FOMUKONG** sent a co-conspirator a screenshot of a bank account showing an incoming wire in the amount of $149,226.

t.    On or about July 3, 2017, a co-conspirator caused Victim I and Victim J to wire $140,134.25 into BOA x9237, controlled by **DIGIFA**.

u.    On or about July 5, 2017, **FOMUKONG** obtained a train ticket for **DIGIFA** to travel from Virginia to Maryland on July 6, 2017 for the purpose of withdrawing from BOA x9237 funds obtained from Victim I and Victim J.

7

v.    On or about July 13, 2017, a co-conspirator caused Victim K to wire $292,830.10 to TD Bank x3845, controlled by **EYONG**.

w.    On or about July 14, 2017, **FOMUKONG** provided **AMIN** an image of wire instructions related to a wire in the amount of $292,830.10 from Victim K to TD Bank x3845.

18 U.S.C. § 1349

## COUNT TWO
### (Money Laundering Conspiracy)

The Grand Jury for the District of Maryland further charges that:

### Introduction

1.      Paragraphs 1 through 24 and 26 through 31 of Count One are incorporated here.

### The Conspiracy

2.      Between on or about January 1, 2011 and the present, in the District of Maryland and elsewhere, the defendants,

**ALDRIN FON FOMUKONG,**
a/k/a "Albanky,"
a/k/a "A.L.,"
**NKENG AMIN,**
a/k/a "Rapone,"
a/k/a "Arnold,"
**YANICK EYONG,**
**CARLSON CHO,**
a/k/a "Uncle Tiga2,"
a/k/a "Carlson Banker,"
**ISHMAIL GANDA,**
a/k/a "Banker TD," and
**IZOU ERE DIGIFA,**
a/k/a "Lzuo Digifa,"
a/k/a "Mimi VA,"

did knowingly combine, conspire, and agree with each other, and others known and unknown to the Grand Jury to conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity—to wit, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349—while knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and:

a.      . with the intent to promote the carrying on of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

9

b.      knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

**Manner and Means**

3.      It was part of the conspiracy and scheme to defraud that the defendants and their co-conspirators opened and/or managed the Drop Accounts in order to receive millions of dollars into those accounts from the Victims.

4.      It was further part of the conspiracy and scheme to defraud that the defendants and their co-conspirators caused the Victims to use the wires to transfer money to the Drop Accounts.

5.      It was further part of the conspiracy and scheme to defraud that the defendants and their co-conspirators disbursed the money received from the Victims into the Drop Accounts by using wires to transfer money to other accounts, by initiating account transfers to other accounts at the same bank, by withdrawing sums of money, by obtaining cashier's checks, and by writing checks to other individuals or entities, all to promote wire fraud conspiracy and other criminal conduct, and to hide true ownership and disguise the nature, source, and control of those assets.

**Overt Acts**

6.      In furtherance of the conspiracy, and to effect the objects thereof, the defendants, and others known and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in the District of Maryland and elsewhere:

a.      On or about June 24, 2016, after receiving two separate wire transfers from Victim A into Capital One x4384, Individual 1 obtained a cashier's check in the amount of

10

$51,000 to Business 1, which **FOMUKONG** used to purchase a 2011 Porsche 4-door sedan bearing VIN: WP0AA2A76BL021431.

b.      On or about January 27, 2017, after receiving a $165,179.30 wire transfer from Victim B into TD Bank x1076, **DIGIFA** wrote a $60,050 check made out to **FOMUKONG** for "car purchase" and a $98,450 check to Albanky Production LLC for "business purposes."

c.      On or about January 27, 2017, **FOMUKONG** deposited the $60,050 check into TD Bank account x9230 ("TD Bank x9230"), controlled by **FOMUKONG**.

d.      On or about January 27, 2017, **FOMUKONG** deposited the $98,450 check into TD Bank account x0937, controlled by **FOMUKONG**.

e.      On or about January 30, 2017, **FOMUKONG** obtained a $17,299.94 check from TD Bank x9230 to purchase a 2010 Mercedes 4-door sedan bearing VIN: WDDHF8HB6AA137791.

f.      On or about March 9, 2017, after receiving two separate wire transfers in the amount of $875,000 and $123,620.55 from Victim C and Victim D, Individual 2, at the direction of **FOMUKONG** and with the assistance of **CHO**, caused and attempted to cause a wire transfer in the amount of $393,750 to a bank account located in Cameroon in the name of Individual 4, and a separate wire transfer in the amount of $350,000 to a bank account located in South Africa in the name of Business 2.

g.      On or about May 3, 2017, after receiving a $458,500 wire transfer from Victim E into BOA x9244, **AMIN** made a $220,000 wire transfer to Bank of America account x3599 ("BOA x3599"), controlled by Individual 5.

11

h.      On or about May 3, 2017, **AMIN** obtained from BOA x9244 a $105,000 cashier's check made out to Business 3 and a $98,000 check made out to Individual 6.

i.      On or about May 3, 2017, **FOMUKONG** used the $105,000 cashier's check to purchase a 2012 Bentley Continental, bearing VIN SCBFR7ZA8CC070453 from Business 3.

j.      On or about May 3, 2017, **AMIN** made a $500 ATM withdrawal from BOA x9244, controlled by **AMIN**.

k.      On or about May 3, 2017, **AMIN** made a $5,000 cash withdrawal from BOA x9244, controlled by **AMIN**.

l.      On or about May 3, 2017, **AMIN** made a $2,500 cash withdrawal from BOA x9244, controlled by **AMIN**.

m.      On or about June 9, 2017, after receiving a $50,703 wire transfer from Victim F into SunTrust x4431, **DIGIFA** withdrew $44,486, comprised of a check in the amount of $39,486 made out to Business 4 and the remainder in cash.

n.      On or about June 15, 2017, after receiving a $227,000 wire transfer from Victim L into BOA x7760, **CHO** purchased flights from Massachusetts to Texas for himself and Individual 3 using a debit card associated with BOA x7760.

o.      On or about June 16, 2017, **CHO** and Individual 3 withdrew a total of $202,200 from BOA x7760, comprised of a $8,000 cash withdrawal, a $9,200 cash withdrawal, a cashier's check in the amount of $90,000 made out to Business 4, and a second cashier's check in the amount of $95,000 made out to Business 4, all from Bank of America branches located in Texas.

12

p.  On or about June 21, 2017, after receiving a $6 million wire transfer from Victim G into BOA x0041, **EYONG** made a $2,350,000 wire transfer to a bank account located in South Africa in the name of Business 5.

q.  On or about June 22, 2017, **EYONG** obtained three cashier's checks from BOA x0041, namely three $95,000 checks each in the name of Business 6.

r.  On or about June 23, 2017, **EYONG** obtained three additional cashier's checks from BOA x0041, namely a $95,000 check in the name of Individual 7, a $95,000 check in the name of Business 6, and a second $95,000 check in the name of Business 6.

s.  On or about June 26, 2017, after receiving a $104,450 wire transfer from Victim H into Capital One x3758, **FOMUKONG** requested two wire transfers, one in the amount of $36,400 to an account in the name of Individual 4, and the other in the amount of $41,797 to an account in the name of Individual 4.

t.  On or about June 30, 2017, after receiving a $149,226 wire transfer from Victim H into NFCU x3451, **GANDA** transferred $50,000 to NCFU x5615, controlled by **GANDA**.

u.  On or about June 30, 2017, **GANDA** transferred $4,000 from NFCU x5615 to Navy Federal Credit Union account x3690 ("NFCU 3690"), controlled by **GANDA**.

v.  On or about June 30, 2017, **GANDA** transferred $4,000 from NFCU x5616 to NFCU x8060, controlled by **GANDA**.

w.  On or about July 3, 2017, **GANDA** transferred $600 from NFCU x3451 to Navy Federal Credit Union account x3445 ("NFCU x3445"), controlled by **GANDA**.

x.  On or about July 3, 2017, **GANDA** transferred $2,000 from NFCU x3451 to NFCU x3690, controlled by **GANDA**.

13

y.     On or about July 3, 2017, **GANDA** transferred $18,158 from NFCU x3451 to NFCU x8060, controlled by **GANDA**.

z.     On or about July 3, 2017, **GANDA** made an $18,000 cash withdrawal from NFCU x8060.

aa.     On or about July 3, 2017, **GANDA** transferred $32,000 from NFCU x3451 to NFCU x5615, controlled by **GANDA.**

bb.     On or about July 5, 2017, **GANDA** transferred $1,750 from NFCU x3451 to NFCU x3445.

cc.     On or about July 5, 2017, after receiving a $140,134 wire transfer from Victim I and Victim J into BOA x9237, **DIGIFA** made a $5,000 cash withdrawal, a $6,000 cash withdrawal, and a $10,000 cash withdrawal, each from a different Bank of America branch in Maryland.

dd.     On or about July 14, 2017, after receiving a $292,830.10 wire transfer from Victim K into TD Bank x3845, **EYONG** made a $5,000 cash withdrawal from a TD Bank branch in Beltsville, Maryland.

ee.     On or about July 14, 2017, **EYONG** made a separate $5,000 cash withdrawal from TD Bank x3845 from a TD Bank branch in Laurel, Maryland.

ff.     On or about July 14, 2017, **EYONG** obtained a $58,500 check made out to Business 3, which **FOMUKONG** used to purchase a 2014 black colored Land Rover bearing VIN: SALGS2WF5EA158828.

18 U.S.C. § 1956(h)

14

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), in the event of the defendants' conviction on Counts One and Two of this Superseding Indictment.

### Wire Fraud Forfeiture

2.      As a result of the offense set forth in Count One, the defendants,

**ALDRIN FON FOMUKONG,**
**a/k/a "Albanky,"**
**a/k/a "A.L.," and**
**NKENG AMIN,**
**a/k/a "Rapone,"**
**a/k/a "Arnold,"**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, including but not limited to the following:

        a.      a 2010 Mercedes 4-door Sedan bearing VIN: WDDHF8HB6AA137791;

        b.      a 2011 Porsche 4-door sedan bearing VIN: WP0AA2A76BL021431; and

        c.      a 2014 black colored Land Rover bearing VIN: SALGS2WF5EA158828.

15

## Money Laundering Forfeiture

3. Upon conviction of the offense set forth in Count Two of this Superseding Indictment, the defendants,

**ALDRIN FON FOMUKONG,**
a/k/a "Albanky,"
a/k/a "A.L.,"
**NKENG AMIN,**
a/k/a "Rapone,"
a/k/a "Arnold,"
**YANICK EYONG,**
**CARLSON CHO,**
a/k/a "Uncle Tiga2,"
a/k/a "Carlson Banker,"
**ISHMAIL GANDA,**
a/k/a "Banker TD," and
**IZOU ERE DIGIFA,**
a/k/a "Lzuo Digifa,"
a/k/a "Mimi VA,"

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real and personal, involved in such offense, and any property traceable to such property, including but not limited to the following:

    a.    a 2010 Mercedes 4-door sedan bearing VIN: WDDHF8HB6AA137791;

    b.    a 2011 Porsche 4-door sedan bearing VIN: WP0AA2A76BL021431; and

    c.    a 2014 black colored Land Rover bearing VIN: SALGS2WF5EA158828.

## Substitute Assets

4. If, as a result of any act or omission of the defendant, any such property subject to forfeiture:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

16

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided

without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek forfeiture

of any other property of said defendant up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(2)
21 U.S.C. § 853
28 U.S.C. § 2461(c)

*Stephen M. Schenning*

Stephen M. Schenning
Acting United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: 3-12-2018